**UNITED STATES of America,**
**Appellant,**

v.

**William Robert WRIGLEY, Appellee.**

**No. 75–1235.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1975.

Decided July 18, 1975.

Certiorari Denied Nov. 17, 1975.
See 96 S.Ct. 396.

Philip J. Adams, Jr., Sp. Atty., Dept. of Justice, Kansas City, Mo., for the United States.

David R. Freeman, Federal Public Defender, Kansas City, Mo., for appellee, William Robert Wrigley.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

William Robert Wrigley was charged by indictment with knowingly making false material declarations before a grand jury in violation of 18 U.S.C. § 1623. He pleaded not guilty. By motion, pursuant to Federal Rule of Criminal Procedure 12(b), he challenged the authority of Special Attorneys Philip J. Adams, Jr. and Gary T. Cornwell, both full-time government attorneys of the Department of Justice, to conduct the grand jury proceedings from which the indictment issued. The defendant asserted, and the District Court held, that the special attorneys were not "attorneys for the government" entitled to be present before the grand jury under Federal Rule of Criminal Procedure 6(d). An "attorney for the government" is defined as, *inter alia*, "an authorized assistant of the Attorney General." F.R. Crim.P. 54(c). The District Court reasoned that the special attorneys were not "authorized" assistants of the Attorney General empowered to conduct grand jury proceedings within the meaning of 28 U.S.C. § 515(a) and dismissed the in-

dictment.[1] The government appeals. We reverse.

Section 515(a) of Title 28, United States Code, provides:

> * * * The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

Special Attorney Adams was appointed by letter of authorization which reads:

> Dear Mr. Adams:
>
> The Department is informed that there have occurred and are occurring in the Western District of Missouri and other judicial districts of the United States violations of federal criminal statutes by persons whose identities are unknown to the Department at this time.
>
> As an attorney at law you are specially retained and appointed as a Special Attorney under the authority of the Department of Justice to assist in the trial of the aforesaid cases in the aforesaid district and other judicial districts of the United States in which the Government is interested. In that connection you are specially authorized and directed to file informations and to conduct in the aforesaid district and other judicial districts of the United States any kind of legal proceedings, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized to conduct.
>
> Your appointment is extended to include, in addition to the aforesaid cases, the prosecution of any other such special cases arising in the aforesaid district and other judicial districts of the United States.[2]
>
> You are to serve without compensation other than the compensation you are now receiving under existing appointment.
>
> Please execute the required oath of office and forward a duplicate thereof to the Criminal Division.
>
> Sincerely,
>
> HENRY E. PETERSEN
> Assistant Attorney General.[3]

Cornwell was appointed in a substantially identical letter signed by John C. Keeney, Acting Assistant Attorney General. Each attorney executed the oath of office before entering upon his duties in the Western District of Missouri. The government asserts that the letters of appointment and oath of office satisfy 28 U.S.C. § 515(a).

The defendant's argument focuses upon the statutory language "when specifically directed by the Attorney General." He asserts that the letters of appointment are too broad and fail to give specific direction in the grant of authority.[4] He argues that the statute limits

---

1. The indictment in the instant case was signed by Special Attorney Cornwell and the United States Attorney for the Western District of Missouri.

2. We do not view the letter of appointment as granting the special attorneys a roving commission to prosecute federal offenses throughout the United States. The letter directs them to conduct legal proceedings in the Western District of Missouri. That was done here. *Cf. United States v. Huston*, 28 F.2d 451 (N.D. Ohio 1928).

3. The defendant does not contend that the Attorney General could not delegate his authority under the statute to a subordinate officer of the Department of Justice. Accordingly, that issue is not before us. *Cf. Dominick DiGirlomo v. United States of America*, 520 F.2d 372 (8th Cir. 1975); *United States of America v. Salvatore Ross Agrusa*, 520 F.2d 370 (8th Cir. 1975).

4. In many of the reported decisions construing 28 U.S.C. § 515(a), the contention has been that the grant of authority to the special attorney was too narrow to encompass the activity challenged and that the special attorney had exceeded the scope of the Attorney General's direction. *See Shushan v. United States*, 117

the employment of special attorneys to particular types of cases identified by the Attorney General as unusually important or as requiring particular expertise not possessed by the local United States Attorney. To read the statute otherwise, he reasons, would allow the Attorney General to usurp, through the appointment of special attorneys, the function of the United States Attorneys.[5] Accordingly, he contends that the appointments here, being without limitation as to the type of case to be prosecuted, are invalid.[6] He principally relies, as did the District Court, on *United States of America v. Philip Crispino,* 392 F.Supp. 764 (S.D.N.Y.1975) and *United States of America v. Raymond J. Dulski, et al.,* 395 F.Supp. 1259 (E.D.Wis.1975).

The defendant's argument is statutory. He does not contend that the Attorney General is without power to employ special attorneys under more restrictive letters of appointment. Neither does he contend that the actions of the special attorneys caused him demonstrated prejudice nor deprivation of a constitutional right. He argues simply that the Attorney General is without power under the statute to employ special attorneys with the broad grant of authority "to conduct * * * any kind of legal proceeding * * * which United States Attorneys are authorized to conduct."

The statute, originally codified as 5 U.S.C. § 310, was enacted in response to

*United States v. Rosenthal,* 121 F. 862 (S.D.N.Y.1903). There the Merchants' Association of the City of New York, concerned with possible fraudulent importations of Japanese silks, prevailed upon the Attorney General to appoint Mr. W. Wickham Smith, a private attorney, to investigate the matter. The appointee's investigation was conducted independently of the Merchants' Association, although that group agreed to compensate him should the Attorney General be unable to pay for his services. Armed with this commission, grand jury proceedings were initiated that resulted in indictments.

Faced with this factual situation, the court posed the legal issue presented: " * * * what *authority* did the appointment vest in [the appointee]?" (Emphasis added.) *Id.* at 865. A survey of the statutes found the Attorney General without power to appoint special attorneys authorized to appear before grand juries and the indictments were quashed. The court's holding required a technical and narrow construction of the prevailing law which empowered the Attorney General and his officers to " 'conduct and argue any case in any court'." *Id.* at 866. It was held that a grand jury proceeding was not a "criminal case," distinguishing *Counselman v. Hitchcock,* 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). The holding was premised upon the court's view of the

F.2d 110 (5th Cir.), *cert. denied,* 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531 (1941) (indictment of persons not named in letter of appointment); *United States v. Amazon Industrial Chemical Corp.,* 55 F.2d 254 (D.Md.1931) (same); *United States v. Huston, supra* (not authorized by letter of appointment to proceed in district); *United States v. Morse,* 292 F. 273 (S.D.N.Y.1922) (indictment of persons not named in letter of appointment).

5. The United States Attorneys are empowered to prosecute all offenses against the United States in their districts. 28 U.S.C. § 547. They, like the Attorney General, are appointed by the President with the advice and consent of the Senate. 28 U.S.C. §§ 503, 541.

6. The District Court said:
 The government does not state who, how, or under what guidelines or power the deter-

mination that "the subjects under investigation are affiliated with syndicated criminal operations" is made in order that the supervision of particular cases becomes subject to assignment to the Organized Crime and Racketeering Section of the Criminal Division of the Department of Justice.

* * * The Attorney General could easily comply with the mandate of Section 515(a) by use of appropriate letters of appointment which would * * * "specifically direct" a particular Special Attorney to conduct all proceedings, including grand jury proceedings, in connection with the particular individuals who have already been identified by someone in the Department of Justice in Washington. * * * (Footnote omitted.)

congressional intent that "indicate[d] attentive and jealous regard for the primary policy of limiting the conduct of matters before grand juries to the local officers [United States Attorneys]." *Id.* 121 F. at 867.[7] We note that the decision was rendered at a time when

> * * * the rule [was] well settled that where there is an office to be filled, and one, acting under color of authority, fills the office and discharges its duties, his actions are those of an officer *de facto,* and binding upon the public.

*McDowell v. United States,* 159 U.S. 596, 601–602, 16 S.Ct. 111, 113, 40 L.Ed. 271 (1895).[8] It is against this backdrop that we examine the legislative history.

Section 515(a), originally enacted in 1906, overturned the *Rosenthal* decision. Both Houses of Congress introduced bills designed to empower the Attorney General to appoint special attorneys authorized to conduct grand jury proceedings. The Senate bill provided:

> * * * [T]hat all such proceedings shall be begun and conducted by such officials, attorneys, and counsel only under the direction, supervision, and control of the Attorney General.

S. 2969, 59th Cong., 1st Sess. (1906). The House bill which employed the slightly different limiting language found in the statute was finally accepted by both Houses.

The House Report which accompanied the enacted bill stated:

> The Committee on the Judiciary, having had under consideration the bill

(H.R. 17714) to authorize the commencement and conduct of legal proceedings under the direction of the Attorney-General, respectfully report the same back with the recommendation that the same do pass.

> *The purpose of this bill is to give to the Attorney-General,* or to any officer in his Department *or to any attorney specially employed by him, the same rights, powers, and authority which district attorneys now have or may hereafter have in presenting and conducting proceedings before a grand jury or committing magistrate.*

> It has been the practice of the Attorney-General for many years to employ special counsel to assist district attorneys in the prosecution of suits pending in their respective districts whenever the public interest demanded it. It has been the practice of such special counsel to appear, with the district attorney, before grand judges and committing magistrates and to assist in the proceedings pending there. This right passed unchallenged for many years, until the circuit court for the southern district of New York, on March 17, 1903, in the case of the *United States v. Rosenthal,* decided that—

> The Attorney-General, the Solicitor-General, nor any officer of the Department of Justice is authorized by sections 359, 367, or any other provision of the Revised Statutes of the United States (U.S.Comp.Stats., 1901, pp. 207, 209), to conduct or to aid in the con-

---

**7.** This limited view of the Attorney General's powers was quickly rejected in *United States v. Cobban,* 127 F. 713 (D.Mont.1904) and *United States v. Twining,* 132 F. 129 (D.N.J.1904). The Second Circuit states that the *Rosenthal* court was also concerned with the apparent impropriety of a private group using the grand jury for its own purposes. *In re Grand Jury Subpoena of Alphonse Persico,* 522 F.2d 41 (2nd Cir. 1975).

**8.** *Accord, May v. United States,* 236 F. 495 (8th Cir. 1916):

> * * * This is not a proceeding to try the title of Mr. Childs to the office of special assistant to the Attorney General for the

purposes mentioned in the appointment. It is a motion to quash an indictment for the reason that an unauthorized person took part in the proceedings of the grand jury which resulted in the indictment. Such a motion only attacks the authority of Mr. Childs in a collateral way, and beyond all question he was a de facto officer, acting by color of authority, and his acts are valid until it is judicially declared by a competent tribunal in a proceeding for that purpose that he has no right to the office, the duties of which he is performing. * * *

*Id.* at 500. *Compare Glidden Co. v. Zdanok,* 370 U.S. 530, 535, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962).

duct of, proceedings before a grand jury, nor has a special assistant to the Attorney-General such power.

\* \* \* \* \* \*

This decision makes the proposed legislation necessary if the Government is to have the benefit of the knowledge and learning of its Attorney-General and his assistants, or of such special counsel as the Attorney-General may deem necessary to employ to assist in the prosecution of a special case, either civil or criminal. As the law now stands, only the district attorney has any authority to appear before a grand jury, no matter how important the case may be and no matter how necessary it may be to the interests of the Government to have the assistance of one who is specially or particularly qualified by reasons of his peculiar knowledge and skill to properly present to the grand jury the question being considered by it.

The Attorney-General states that it is necessary, in the due and proper administration of the law, that he shall be permitted to employ special counsel to assist the district attorney in cases which district attorneys or lawyers do not generally possess, and in cases of such usual [sic] importance to the Government, and that such counsel be permitted to possess all of the power and authority, in that particular case, granted to the district attorney, which, of course, includes his right to appear before a grand jury either with the district attorney or alone.

It seems eminently proper that such power and authority be given by law. It has been the practice to do so in the past and it will be necessary that the practice shall continue in the future.

If such a law is necessary to enable the Government to properly prosecute those who are violating its laws, it is no argument against it that some grand jury may be, perhaps, unduly influenced by the demands or importunities that may be made upon it by such special counsel. The same argument can as well be made against permitting a district attorney from attending a sitting of such jury.

There can be no doubt of the advisability of permitting the Attorney-General to employ special counsel in special cases, and there can be no question that if he has been employed because of his special fitness for such a special case that the Government should have the full advantage of his learning and skill in every step necessary to be taken before the trial, including that of appearing before grand juries.

H.R.Rep.No.2901, 59th Cong., 1st Sess. (1906) (Emphasis added.).

We are convinced from a careful reading of the statutory language and a review of the legislative history that Special Attorneys Adams' and Cornwell's authorization to conduct grand jury proceedings was proper under § 515(a).[9]

 Their letters of appointment stated that they were "specially authorized and directed \* \* \* to conduct \* \* \* any kind of legal proceedings \* \* \* including grand jury proceedings \* \* \* which United States Attorneys are authorized to conduct." Section 515(a) on its face does not require more.[10] As stated by the court in *United*

---

**9.** An attempt to amend the statute so as to eliminate the limitation "when specifically directed by the Attorney General" was made in 1945. Senate Bill, S. 1519, 79th Cong., 1st Sess. (1945). The bill was not reported out of committee and is irrelevant to the interpretation of the legislative history. *See Order of Railway Conductors v. Swan,* 329 U.S. 520, 529, 67 S.Ct. 405, 91 L.Ed. 471 (1947); *State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099, 1116 (8th Cir. 1973).

**10.** The statute is a broad grant of authority that empowers

\* \* \* the Attorney General to clothe his subordinates with authority to make any appropriate investigation or prosecution, having to do with any alleged offense under any laws of the United States. \* \* \*

*United States v. Amazon Industrial Chemical Corp., supra* at 257 (holding that the letters of appointment did not have to identify the defendant indicted).

*States v. Brown,* 389 F.Supp. 959 (S.D.N.Y.1975):

Clearly, therefore, in express terms [the strike force attorney] was specifically authorized and directed to conduct the kind of grand jury proceedings that led to the indictment here. He was authorized for "any kind" of prosecution which a regular United States Attorney could conduct before any Grand Jury. This is not a case where the prosecutor has been authorized and directed to prosecute only one type of case or to proceed only against a particular defendant or to perform only one particular function and where nonetheless he has overstepped such limited and special authority. * * *

*Id.* at 960 (Citation omitted.). *Accord, In re Jerry Langella,* No. 74 C 638 (E.D. N.Y. February 27, 1975); *United States v. Irwin Weiner, et al.,* 392 F.Supp. 81 (N.D.Ill.1975); *compare United States v. Cohen,* 273 F. 620 (D.Mass.1921) (special

attorney was not specifically directed and authorized to sign informations).[11]

■■■ The purported limitation to the Attorney General's powers is not contained in the statute and is contrary to the thrust of the statutory scheme. Congress has placed in the Attorney General the duty to conduct the criminal litigation of the United States. 28 U.S.C. § 516; *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039, 1056 (1974). His powers include the direction and supervision of the United States Attorneys and the appointment and removal of their assistants. 28 U.S.C. §§ 519, 542 and 543.[12] The assertion that § 515(a) contains a limitation on the powers of the Attorney General in preservation of the independence of the United States Attorneys is, when placed in context, unpersuasive.[13] *See In re Grand Jury Subpoena of Alphonse Persico,* 522 F.2d at 54–56 (2nd Cir. 1975). The statute is not a limitation but a grant of authority that makes the powers of the Attorney General coextensive with his duties.[14] *See Unit-*

**11.** In so holding, we reject the view of the Second Circuit that the power of the Attorney General to authorize special attorneys to appear before grand juries is limited to situations where there is a special reason to limit the role of the local district attorney and where that reason has been made explicit by the Attorney General. *In re Grand Jury Subpoena of Alphonse Persico, supra* 522 F.2d at 60. In light of our holding, it is unnecessary for us to examine whether a sufficient reason can be found in the grants of authority by Congress to the Justice Department to undertake wide ranging and effective attacks on organized crime. *Id.* at 65–66. It is equally unnecessary for us to decide whether writings, guidelines, practices and oral directions internal to the Department of Justice but external to the record would be sufficient to meet an additional requirement of explicitness.

**12.** * * * The Attorney General has powers of "general superintendence and direction" over district attorneys * * * and may directly intervene to "conduct and argue any case in any court of the United States" * *. Thus he may displace district attorneys in their own suits * * * institute those which they decline to press. * * * His powers must be coextensive with his duties. * * *

*Sutherland v. International Ins. Co. of New York,* 43 F.2d 969, 970 (2nd Cir.), *cert. denied,* 282 U.S. 890, 51 S.Ct. 103, 75 L.Ed. 785 (1930).

**13.** The "independence" of the United States Attorneys is preserved not by a restrictive reading of 28 U.S.C. § 515(a) but by 28 U.S.C. § 541 which makes them subject to removal only by the President. *See In re Grand Jury Subpoena of Alphonse Persico, supra* 522 F.2d at 51–52. There is no evidence in this record to support the view that the special attorneys do not act in conjunction with the United States Attorneys in a coordinated attack on crime. *See id.,* 522 F.2d at 67–71.

**14.** As stated by the Court in *United States v. Hall,* 145 F.2d 781, 784 (9th Cir. 1944), *cert. denied,* 324 U.S. 871, 65 S.Ct. 1016, 89 L.Ed. 1425 (1945):

* * * We shall presently see by quoting § 310 of Title 5 U.S.C.A. [now 28 U.S.C. § 515(a)] that the measure of the district attorney's authority in litigation is made the measure of the Attorney General's authority and that therefore the instant proceeding falls within the later official's authorization. * * * *Accord, United States v. Sheffield Farms Co.,* 43 F.Supp. 1, 3 (S.D.N.Y.1942).

*ed States v. Hall,* 145 F.2d 781, 784 (9th Cir. 1944), *cert. denied,* 324 U.S. 871, 65 S.Ct. 1016, 89 L.Ed. 1425 (1945); *Sutherland v. International Ins. Co. of New York,* 43 F.2d 969, 970 (2nd Cir.), *cert. denied,* 282 U.S. 890, 51 S.Ct. 103, 75 L.Ed. 785 (1930). Nothing would be gained by requiring the Attorney General to designate the type of case to be prosecuted by the special attorneys when there is no limitation to the scope of his authority. To do so would be to heighten form over substance. *See United States v. Amazon Industrial Chemical Corp.,* 55 F.2d 254, 256 (D.Md.1931).

■ Moreover, § 515(a) contains no standards by which a court can determine whether a special attorney's appointment is properly limited to particular cases of unusual importance. *See Weiss v. Morgenthau,* 233 F.Supp. 307, 308–309 (S.D.N.Y.1964), *aff'd per curiam,* 334 F.2d 428 (2nd Cir. 1965). The supposed limitation asserted by the defendant is largely illusionary for the judiciary cannot, absent statutory or constitutional direction, determine the course of executive discretion. *See Goldberg v. Hoffman,* 225 F.2d 463, 465–466 (7th Cir. 1955).

> \* \* \* The province of the court is, solely, to decide on the rights of individuals, not to inquire how the executive, or executive officers, perform duties in which they have a discretion. Questions in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court.

*Marbury v. Madison,* 1 Cranch 137, 170, 5 U.S. 137, 2 L.Ed. 60 (1803).[15]

■ The purpose of § 515(a) is to aid the effective enforcement of the criminal laws, to center the responsibility therefor in the Attorney General, and to insure that the United States is represented by persons with authority. *See United States v. Denton,* 307 F.2d 336, 338 (6th

Cir.), *cert. denied,* 371 U.S. 923, 83 S.Ct. 292, 9 L.Ed.2d 232 (1962); *Shushan v. United States,* 117 F.2d 110, 114 (5th Cir.), *cert. denied,* 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531 (1941); *Sutherland v. International Ins. Co. of New York, supra* at 970; *United States v. Powell,* 81 F.Supp. 288, 291 (E.D.Mo.1948). All that was done in this case.

The Attorney General stated before the committee that he would employ special attorneys only in cases of unusual importance to the United States requiring expertise not possessed by United States Attorneys, but this limitation was not expressed in the legislative history or the statute. This failure must be understood in light of the Congress's contemporary concern for efficient supervision of the government's legal personnel. The Congress was concerned that there be no duplication of legal effort or continuation of the financial abuses previously incurred in the employment of private attorneys. *See United States v. Crosthwaite,* 168 U.S. 375, 379, 18 S.Ct. 107, 42 L.Ed. 507 (1897); *In re Grand Jury Subpoena of Alphonse Persico, supra,* 522 F.2d at 60; *Sutherland v. International Ins. Co. of New York, supra* at 970. The decision as to when special attorneys were to be employed, however, was left solely to the discretion of the Attorney General. Nothing in the legislative history, and certainly nothing in the statute, evidences a congressional intent to subject the Attorney General's decision to review. His is the duty to conduct the criminal litigation of the United States. 28 U.S.C.A. § 516.

■ While we are constrained by the language of the statute, we are concerned, as is the District Court, with the policy questions involved in this case. We share many of its apprehensions with respect to the widespread use of special attorneys; an apprehension that has not been lessened by the sometimes inept performance in recent years of special

---

15. None of the cases cited by the defendant or disclosed by our research wherein the appointment of the special attorney was limited to the prosecution of particular cases inquired into the basis of the Attorney General's decision in accordance with the defendant's view of the Congressional intent.

attorneys at the district and appellate levels of this Circuit. But we remain convinced that until Congress imposes limitations on the power of the Attorney General, we must accept his right to authorize, absent a violation of the Constitution, special attorneys to conduct any criminal proceeding in a designated judicial district which United States Attorneys are authorized to conduct. Moreover, we are confident that the Attorney General will exercise his power in a responsible manner.